IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE CURTIS THOMPSON,
DODIE THOMPSON

    Debtors,

Bankruptcy Case Number
16-80832-CRJ-13

CURTIS THOMPSON,
DODIE THOMPSON,

    Plaintiffs,

v.

Adversary Proceeding No.
21-80070-CRJ

CAPITAL ONE, NATIONAL ASSOCIATION,

    Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT CAPITAL ONE, N.A.'S RESPONSE TO ORDER TO SHOW CAUSE

    COMES NOW the Debtors/Plaintiffs Curtis and Dodie Thompson, by and through their undersigned counsel, and hereby responds to Defendant Capital One, N.A.'s Response to Order to Show Cause. Plaintiffs' counsel maintains his position that Capital One's actions, as asserted in the complaint and in this response, violated the automatic stay.

## BACKGROUND

1. The Thompsons filed a Chapter 13 bankruptcy petition on March 17, 2016.
2. Capital One is listed as a creditor in the schedules filed by the Thompsons.
3. Capital One filed Proof of Claim number 7 in the Thompson's case on 4/1/2016 for a debt secured by a 2014 Honda Civic. Capital One received payment from the Chapter 13 Trustee from May of 2016 to March of 2021, which paid 100% of the secured debt.
4. The Plaintiffs allege that Capital One violated the automatic stay by sending the Thompsons a letter in order to create a new security interest and perfect a lien for the debt that was paid in full in their case. The letter was sent on May 10, 2021. The first page of the letter was titled: "SIGN AND RETURN" and states "The enclosed title application form(s) must be signed by each registered owner listed on the current title……**NOTE: Placing Capital One Auto Finance as the first position lien holder on your refinanced title helps you stay in compliance with state and federal law**." The attached form was titled: "Notice of Continuous Security Interest or Lien Perfection." (See Exhibit 1 Capital One Letter). Mrs. Thompson signed and returned the

1

form on May 19, 2021 because she thought it was required by law and that they were returning her title.

5. On May 19, 2021, an Order of Discharge was entered in the Thompsons' case.
6. On May 28, 2021, Mrs. Thompson called Capital One to ask when she would receive her title. The call was answered by Capital One's automated system, which **told Mrs. Thompson that she owed $12,085.63 on the 2014 Honda Civic, that Capital One hasn't received a payment since March for $37.95, and instructed her to make a payment**. Mrs. Thompson demanded to be transferred to a representative, who then proceeded to tell her that he did not know what she still owed on the vehicle.
7. The Plaintiffs assert that after they paid 100% of the debt on the vehicle and had a pending discharge, Capital One **attempted to refinance** the debtors' fully paid loan, to **continue their security interest**, and **demanded payment**. It seems likely that the Thompsons' account was mishandled and categorized as a Chapter 7 discharge instead of a Chapter 13 discharge. That is the only plausible explanation **for their attempt to refinance the vehicle and create, or continue, a security interest**. Unfortunately, Capital One has not offered any cogent explanation as to their actions in either their answer, which is comprised of general denials, or their response to the order to show cause entered by this honorable Court.
8. In order to avoid incurring unnecessary fees and in the interest of settlement, the plaintiffs did not file a motion for contempt and sanctions based on the call, in which Capital One demanded payment. Technically, these matters present two separate and discrete causes of action with different burdens of proof. See *Greenpoint Credit v. McLean,* No. 14-14002 (11th Cir. 2015). Debtors' counsel elected not to formally assert the later cause of action, both to promote judicial economy, and because an effort at settlement was underway. However, information about the phone call and demand for payment was included in the adversary proceeding complaint because it provides context to the letter sent by the defendant. The Thompsons account with Capital One was clearly still marked with a $12,085.63 account balance, and that is the reason why they sent the Thompsons a form to refinance the loan and to continue their security interest and lien on the vehicle. Further, it should be noted that the phone call was **not** addressed in Capital One's response to this honorable Court's show cause order.

**ARGUMENT**

**The letter sent by Capital One to the Thompsons was a violation of the automatic stay and the phone call in which Capital One demanded payment was a violation of the discharge injunction.**

Plaintiffs assert Capital One violated 11 U.S.C. §362(a) in that the letter was:
- A commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was

2

Case 21-80070-CRJ    Doc 29    Filed 01/14/22    Entered 01/14/22 17:16:32    Desc Main
Document      Page 2 of 6

or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; An act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
- An act to create, perfect, or enforce any lien against property of the estate;
- an act to create, **perfect**, or enforce against property of the debtor **any lien** to the extent that **such lien secures a claim that arose before the commencement of the case** under this title; and
- an act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Capital One states in their response that they sent the lien release for the 2014 Honda Civic to the Alabama Department of Motor Vehicles on June 1, 2021, a day before this adversary proceeding was filed. This appears to be an attempt at correcting their mistake – releasing the lien instead of continuing it. However, the plaintiffs have not received any evidence that the lien was released on June 1. In fact, since the debtors mailed the form back to Capital One on May 16, 2021 and did not receive their lien release until June 14, 2021, 12 days after the filing of this adversary proceeding, the plaintiffs assert that Capital One only realized their mistake after the filing of the instant case, and likely after filing the form to continue their lien. For what purpose did Capital One send the letter attempting to refinance the loan and continue the lien, only to then immediately file a release of the lien? Simple logic indicates that a mistake was made.

The fact that Capital One did not send post-petition billing statements to the debtors does not mean that their procedures worked, as stated in their response to the show cause order. Their procedures did not prevent them from attempting to refinance a debt claimed in the Thompsons' case, paid in full, and due to be discharged in 9 days. Their procedures did **not** prevent them from acting to continue a lien/security interest for the remaining unsecured portion of the debt. Additionally, it did **not** prevent their automated call answering system from **demanding payment in the amount of $12,085.63 from the debtors when they called to inquire about their title**. Capital One has not yet responded or provided any cogent explanation as to this demand for payment. Further, Capital One states in their response to the show cause order that, to ensure compliance with the automatic stay, their processes stop communications with debtors, except as necessary to comply with applicable federal, state, and local law. Plaintiffs' counsel has not identified any law requiring the sending of the subject letter or the continuation of the lien.

The crux of Capital One's post-settlement defense is that they did not violate the stay because their attempted continuation of the lien is permitted by 11 U.S.C. § 362(b)(3).

> 11 U.S.C. § 362:
> **(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

3

> **(3)** under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

> 11 U.S.C. §546:
> **(b)**
> **(1)** The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—
> **(A)** permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
> **(B)** provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

> 11 U.S.C. § 547:
> **(e)**
> **(2)** For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
> > **(A)** at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

In general, the purpose of 11 U.S.C. § 362(b)(3) is to allow creditors the ability to perfect a lien on property which was obtained before the debtor's bankruptcy filing, but was not yet perfected before the commencement of the case, or a lien that became invalidated post-petiton. The following cases are examples of the purpose of §362(b)(3). *In re 800 Bourbon St. LLC*, Ruling: "Lien that was invalidated postpetition could be continued without violating the automatic stay and was not subject to avoidance." *Branch Banking & Trust Co. v. Construction Supervision Servs.* (*In re Construction Supervision Servs*), Ruling: "Liens that arose upon subcontractor's prepetition delivery of materials were interests in debtor's property, even though not perfected on petition date."

## CONCLUSION

In sum, Capital One is arguing that the Thompsons' bankruptcy filing did not operate as a stay as to their efforts to continue the lien on the debtors' property. This argument fails for several reasons. The letter was not only an attempt to continue the lien, it was an attempt to **refinance** the loan, which had been paid in full through the Thompsons' Chapter 13 plan. For

4

what purpose would Capital One attempt to refinance the loan and continue the lien after receiving payment in full from the trustee with a clearly impending discharge order? Further, even if Capital One had a continuing interest in the property, any remaining interest they had was unsecured. The value of Capital One's interest in the property, the secured portion of the debt as controlled by the claim, was paid in full. Capital One's attempt to refinance the debtors' loan and continue their lien does not serve any legitimate purpose and does not fit within any exception to the automatic stay. Capital One's actions run counter to the automatic stay and are contrary to the mandates embodied in the Federal Bankruptcy Code – most notably, undermining the debtors hard earned fresh start.

  The Plaintiffs still wish to settle this matter, and are satisfied with the settlement reached by their counsel. However, the Plaintiffs will respectfully follow the recommendations of this honorable Court.

Respectfully submitted this the 14th day of January, 2022.

/s/ *John C. Larsen*_____
John C. Larsen
Attorney for the Debtors/Plaintiffs
Curtis and Dodie Thompson

OF COUNSEL:
LARSEN LAW P.C.
1733 Winchester Road
Huntsville, Alabama 35811
(256) 859-3008
john@jlarsenlaw.com

# CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing has been filed via the Court's CM/ECF system, which will electronically notify the below listed attorneys of record, on this the 14th of January, 2022.

Christina Lesko
Attorney for Capital One, N.A.
TROUTMAN PEPPER
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
Christina.Lesko@troutman.com

Alan D. Mathis
Attorney for Capital One, N.A.
BUTLER SNOW LLP
1819 Fifth Avenue North, Suite 1000
Birmingham, AL 35203
Alan.Mathis@butlersnow.com

                                                         /s/ *John C. Larsen*